# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>FOUNTAIN VILLAGE DEVELOPMENT,<br><br>                Debtor. | Case No. 09-39718-rld11<br>Chapter 11<br><br>(filed in the United States Bankruptcy Court, District of Oregon) |
| CITY AND BOROUGH OF JUNEAU,<br><br>                Plaintiff,<br><br>        v.<br><br>JOHN BEARDSLEY; JANET BEARDSLEY; and JOHN BEARDSLEY AND JANET BEARDSLEY d/b/a FOUNTAIN VILLAGE DEVELOPMENT,<br><br>                Defendants. | Adv. No. J14-90007-GS |

### MEMORANDUM ON MOTION FOR REMAND AND MOTION FOR CHANGE OF VENUE

Defendants John and Janet Beardsley, d/b/a Fountain Village Development (collectively, "the Beardsleys"), removed this civil action from the Alaska Superior Court in Juneau on May 2, 2014. They contend the claims asserted by the plaintiff, the City and Borough of Juneau ("Juneau"), have been discharged in bankruptcy. Juneau has moved to remand this action to state court, and the Beardsleys have moved to transfer venue to the Bankruptcy Court for the District of Oregon, where Fountain Village Development ("FVD") successfully reorganized under chapter 11. Because it is appropriate for the Bankruptcy

Court for the District of Oregon to determine whether Juneau's claims have been discharged or otherwise affected by FVD's chapter 11 plan, the motion to transfer venue will be granted. For the same reason, this court will defer ruling on Juneau's motion for remand. This motion should be addressed by the Oregon Bankruptcy Court as well.

# FACTS

Defendants John and Janet Beardsley were partners in FVD, an Oregon general partnership. FVD filed a chapter 11 petition in the United States Bankruptcy Court for the District of Oregon on November 20, 2009.[1] Its Schedule E contained a "precautionary" listing for Juneau as follows:

**SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS**[2]
(Continuation Sheet)

*Note: John and Janet Beardsley are codebtors on all debt listed in this schedule*

Taxes and Certain Other Debts
Owed to Governmental Units

TYPE OF PRIORITY

| Creditor's Name, and Mailing Address | Date Claim was Incurred and Consideration for Claim | Amount of Claim | Amount not Entitled to Priority, if Any | Amount Entitled to Priority |
|---|---|---|---|---|
| City/Borough of Juneau Assessor's Office, 1st Fl. 155 South Seward St Juneau, AK  99801 | Precautionary - Property Taxes | 0.00 | 0.00 | 0.00 |

---

[1] *Decl. of A. Schoen* (*"Schoen Dec."*)(Docket No. 16), at 2.

[2] *See* Ex. 5 to Juneau's *Reply to Defs.' Opp'n to Mot. to Remand* (Docket No. 19), at 14.

2

Juneau was also listed as a general unsecured creditor on FVD's Schedule F (with respect to a ground lease), and on Schedule G, as to an unexpired lease.[3] FVD's schedules do not disclose any liability for sales taxes.

Notice of FVD's bankruptcy filing was served on all parties in interest on November 25, 2009.[4] A copy of this notice was mailed to Juneau at the address listed on Schedule E.[5] In September of the following year, the Oregon Bankruptcy Court entered an order approving FVD's disclosure statement and setting a confirmation hearing for November 29, 2010.[6] FVD's bankruptcy counsel served copies of this order, with FVD's disclosure statement and plan, on all parties in interest on September 28, 2010.[7] FVD's chapter 11 plan was confirmed on December 22, 2010, and FVD's bankruptcy counsel served a copy of the order confirming the plan to all parties listed on the matrix the same day.[8]

FVD's confirmed plan contained the following provisions:

> 8.1    Debtor's Injunction. The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against Reorganized Company that was or could

---

[3] *Schoen Decl.* (Docket No. 16), at 2.

[4] Ex. 1 to *Schoen Decl.* (Docket No. 16-1), at 5.

[5] *Id.* at 6.

[6] Ex. 2 to *Schoen Decl.* (Docket No. 16-2), at 1.

[7] *Schoen Decl.* (Docket No. 16), at 2-3.

[8] *Id.* at 3.

3

have been commenced before the entry of the Confirmation Order, . . .

    8.2   BEARDSLEY'S INJUNCTION. ANY AND ALL CREDITORS HOLDING A CLAIM AGAINST DEBTOR OR DEBTOR'S GUARANTORS SHALL BE TEMPORARILY ENJOINED FROM ATTEMPTING TO COLLECT ITS CLAIM FROM JOHN BEARDSLEY AND/OR JANET BEARDSLEY OR ANY OF THEIR PROPERTY UNTIL SUCH TIME AS ALL REQUIRED PLAN PAYMENTS HAVE BEEN MADE OR THERE IS A DEFAULT UNDER THE PLAN THAT IS NOT CURED WITHIN 15 BUSINESS DAYS AFTER RECEIPT OF NOTICE TO DEBTOR AND THE BEARDSLEYS. Applicable statutes of limitations for enjoined claims shall be tolled until the date that is 30 days following the termination of the foregoing injunction.[9]

The plan also provided that the Oregon Bankruptcy Court would retain jurisdiction of FVD's chapter 11 case to determine requests for payment of § 507(a) priority claims, to resolve controversies or disputes regarding interpretation of the plan, and to implement the provisions of the plan and enter orders in aid of confirmation.[10]

Juneau did not file a claim in FVD's bankruptcy case. However, it did contact FVD during the pendency of the chapter 11 case regarding outstanding sales tax returns. On August 20, 2010, before FVD's disclosure statement was approved, Juneau's Sales Tax Department sent a letter to FVD advising that it had been unable to locate FVD's sales tax

---

[9] Ex. A to the Beardsley's *Additional Documentation* (Docket No. 20-1), at 34 (emphasis in original). "Reorganized Company" is defined in the *Plan* as "an Oregon limited liability company into which Debtor will be converted on or before the Effective Date. The General Partners will be the sole initial members of the Reorganized Company." *Id.* at 17. The Beardsleys are the General Partners of the Reorganized Company. *Id.* at 15.

[10] *Id.* at 35.

4

returns for various periods between June, 2008 and June, 2010.[11]  The Sales Tax Department's mailing address, listed on the letterhead, is identical to the street address for Juneau shown on FVD's *Schedule* F, although to the attention of a different department.

On December 1, 2010, after FVD's disclosure statement was approved, but before its plan was confirmed, Juneau's revenue collector sent FVD's bankruptcy counsel an email that advised:

> I've just started with the City and Borough of Juneau a few months ago as the Revenue Collector.  After researching our files it does appear that received [sic] the Notice to File Proof of Claim.  From what I can see we did not attend the creditors meeting and/or file a proof of claim.  Normally I would have attended the creditors meeting to request that the sales tax returns be filed through the bankruptcy court.  Since we are beyond the creditors meeting is there any other way of requesting to have the returns prepared and filed through the bankruptcy court?[12]

Terry Canby of Beardsley Building Management, replied to Juneau's email on December 18, 2010, on behalf of the debtor.[12]  Mr. Canby attached FVD's quarterly tax returns for the second, third, and fourth quarters of 2008, and all of 2009.  It appears that Mr. Canby signed each of the returns, and designated his title as "Acct'g."[13]  Juneau also alleges

---

[11] Ex. B to the Beardsley's *Additional Documentation* (Docket No. 20-2).

[12] Ex. 3 to *Schoen Decl.* (Docket No. 16-3).

[12] Ex. 7 to Juneau's *Motion to Remand* (Docket No. 19), at 16-24.

[13] *Id.* at 18-24.

5

that Mr. Canby was FVD's chief financial officer.[14] Regarding the bankruptcy, Mr. Canby wrote:

> As soon as Fountain Village Development emerges from Bankruptcy, I will contact you regarding establishing a payment plan for the amounts owing. We are anticipating completion of Court process in 1st quarter, 2011.
>
> Post petition returns are being filed and are current. Next return is due Jan. 2011.
>
> Thank you for your assistance while we complete our reorganization process.[15]

Two days after receiving this email, Juneau's revenue collector forwarded the sales tax returns to Juneau's sales tax administrator, and advised, "Please do NOT send statements out to this vendor until they are out of bankruptcy. Let me know when it's done and entered and I'll contact the taxpayer about it."[16]

FVD's chapter 11 plan became effective on January 1, 2011, and its bankruptcy case was closed April 28, 2011.[17] More than three years later, on April 10, 2014, Juneau initiated a civil action, in Juneau Superior Court, against the Beardsleys to recover FVD's outstanding pre-petition sales taxes for 2008 and 2009. Although FVD is included in the caption and the *Complaint*, it is not a defendant. Rather, Juneau includes FVD as a "d/b/a" of the Beardsleys,

---

[14] Ex. A to *Notice of Removal* (Docket No. 1-1), at 3.

[15] Ex. 7 to Juneau's *Reply* (Docket No. 19), at 16.

[16] *Id.* (emphasis in original).

[17] *Notice of Removal* (Docket No. 1), at 2.

6

although it identified FVD as a partnership of the Beardsleys during the relevant time.[18] The *Complaint* generically asserts that the "Defendants" are liable for the unpaid sales taxes. The *Complaint* acknowledges FVD's bankruptcy filing, but simply alleges, "the sales taxes owed by Defendants were not discharged in the Chapter 11 bankruptcy."[19] It does not discuss, or mention, the injunctions contained within the confirmed plan. For its relief, Juneau affirmatively seeks a judgment against the Defendants that all delinquent sales taxes are trust fund taxes held in trust and that FVD's discharge did not discharge the tax debt.[20]

The Beardsleys removed the action to this court on May 2, 2014, and shortly thereafter filed their *Answer, Affirmative Defenses and Counterclaim.*[21] They assert that Juneau's claim is barred by FVD's plan of reorganization, and that the tax debt was discharged by FVD's bankruptcy.[22] Moreover, they assert a counterclaim for attorney fees arising from Juneau's violation of the discharge and Beardsley injunctions contained in FVD's confirmed plan of reorganization.[23]

---

[18] The Beardsleys deny ever conducting business as FVD, though they admit that they were the general partners of FVD prepetition. *Answer, Affirmative Defenses and Counterclaim ("Answer")* (Docket No. 3), at 6. The general partnership was converted to Fountain Village Development, LLC on or about December 28, 2010. *Id.*

[19] Ex. A to *Notice of Removal* (Docket No. 1-1), at 4.

[20] *Id*.

[21] *Answer*, Docket No. 3.

[22] *Id.* at 6. The Beardsleys also assert affirmative defenses under state law based on waiver and laches. *Id*. at 6-7.

[23] *Id*. at 7-8.

7

On May 16, 2014, the Beardsleys filed their *Motion for Change of Venue*.[24] They contend this action should be transferred, in the interest of justice, to the Oregon Bankruptcy Court, because that court retained jurisdiction over FVD's bankruptcy case to determine requests for payment of priority claims, resolve controversies and disputes regarding interpretation of FVD's plan, and enter orders to aid in implementation of the plan.[25] They note that whether Juneau's claim has been discharged by FVD's bankruptcy is a question of federal, rather than state, law, and assert that this issue should be determined by the Oregon Bankruptcy Court.

Juneau filed a *Motion to Remand* on May 15, 2014.[26] It contends the sales taxes have not been discharged in FVD's bankruptcy because the sales tax debt was not scheduled, and it did not receive proper notice of the bankruptcy case. Juneau believes that any connection between its sales taxes and the FVD bankruptcy were "erased" due to these failures.[27] It also points to the email exchange between it and FVD during the pendency of the bankruptcy, and concludes that the Beardsleys are left only with the equitable defenses of laches and waiver. Juneau argues that these affirmative defenses can be readily determined by the state court, because FVD's chapter 11 doesn't apply to it.[28]

---

[24] Docket No. 8.

[25] *Id.* at 3.

[26] Docket No. 6.

[27] *Juneau's Reply to Defts.' Opp'n to Mot. to Remand* (Docket No. 19), at 2.

[28] *Juneau's Opp'n or Obj. to Defts.' Mot. for Change of Venue* (Docket No. 12), at 8.

8

After oral argument on June 10, 2014, both motions were taken under advisement. On the court's request, the parties supplemented the record after the hearing. The bankruptcy court has jurisdiction to consider these motions under 28 U.S.C. §§ 157(a), 1334(b), and the District Court's *Order of Reference.*

## ANALYSIS

When a state court action is removed to a bankruptcy court in a district other than the one where the bankruptcy proceeding was filed, courts are often faced with competing motions for change of venue and remand, raising an initial question of which to consider first.[29] This case presents just such a question. Courts are divided on the subject, leading one bankruptcy treatise to note that there remains "some confusion about whether a motion to remand or a motion to change venue to the home court should be considered first by the court to which the case has been removed."[30] The facts and circumstances of this case, however, demonstrate that this matter should be transferred to Oregon bankruptcy court. That court, as the "home court," should decide the remand motion.

Change of venue is governed by 28 U.S.C. § 1412, which permits a "district court [to] transfer a case or proceeding under title 11 to a district court for another district, in the

---

[29] *Compare Cornerstone Dental, PLLC v. Smart Dental Care, LLC*, 2008 WL 907374 at *1-2 (Bankr. D. Idaho Mar. 31, 2008)(citing *Weniger v. Intermet Realty P'ship (In re Convent Guardian Corp.)*, 75 B.R. 346 (Bankr. E.D. Pa. 1987)); *Rayonier Wood Products, L.L.C. v. Scanware, Inc. and Finscan (In the Matter of Scanware, Inc.)*, 411 B.R. 889 (Bankr. S.D. Ga. 2009).

[30] 10 COLLIER ON BANKRUPTCY ¶ 9027.09 at 9027-12 (Alan N. Resnick & Henry J. Sommers eds. 16th ed. 2013); *Cornerstone Dental*, 2008 WL 907374 at *1.

9

interest of justice or for the convenience of the parties."[31] The two standards – interest of justice or for convenience of the parties – are in the disjunctive, meaning that each provides an independent basis for transferring venue.[32] "The party urging a change of venue has the burden of showing, by a preponderance of the evidence, that the transfer is warranted. 'Courts have broad discretion in deciding motions under 28 U.S.C. § 1412, and such requests must be reviewed on a case-by-case basis[.]'"[33]

Courts have considered a number of factors to determine whether the transfer of venue is in the interest of justice or for convenience of the parties.[34] When considering the convenience of the parties, courts examine: (1) the location of the plaintiff and defendant, (2) the ease of access to the necessary proof, (3) the convenience of the witnesses and the parties and their relative physical and financial condition, (4) the availability of the subpoena power for unwilling witnesses, and (5) the expense of obtaining unwilling witnesses.[35] The Beardsleys reside in Oregon, ensuring that the litigation of this matter will be inconvenient for one party wherever litigated, but do not seek transfer based upon these factors. Rather, they urge this Court to transfer the case based upon the interests of justice. This analysis

---

[31] 28 U.S.C. § 1412.

[32] *Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004).

[33] *In re Custom Builders of Steamboat, Inc.*, 349 B.R. 39, 42 (Bankr. D. Idaho 2005)(citations omitted); *see also In re Enron*, 317 B.R. at 638 (motion to transfer venue lies within sound discretion of the bankruptcy court, based on a case-by-case analysis).

[34] *Enron*, 317 BR at 638-39.

[35] *Id*. at 639; *see also TIG Ins. Co. v. Smolker*, 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001)(identifying factors to consider for convenience of parties).

10

often begins with recognition of a "home court presumption," by which the location of the original bankruptcy is given some weight.[36] Additionally, courts consider:

> 1) whether transfer would promote the economic and efficient administration of the bankruptcy estate;
>
> 2) whether the interests of judicial economy would be served by the transfer;
>
> 3) whether the parties would be able to receive a fair trial in each of the possible venues;
>
> 4) whether either forum has an interest in having the controversy decided within its borders;
>
> 5) whether the enforceability of any judgment would be affected by the transfer; and
>
> 6) whether the plaintiff's original choice of forum should be disturbed.**[37]**

Of these six factors, "the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate."[38] While Juneau seeks a judgment for unpaid sale taxes under state law, this does not appear to be the focal point of its litigation. Indeed, the parties agree that FVD sent tax returns to Juneau for

---

[36] *TIG Ins.*, 264 B.R. at 668; *see also McGillis/Eckman Inv.-Billings, LLC v. Sportmans's Warehouse, Inc.*, 2010 WL 3123266 at *6 (D. Mont. June 30, 2010); *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*, 2008 WL 425638 at *2 (N.D. Cal. Feb. 14, 2008)(presumption in favor of the home court applies to post-confirmation matters).

[37] *Enron*, 317 B.R. at 638-39.

[38] *Reid-Ashman Mfg., Inc.,* 2008 WL 425638 at *2 *(quoting In re Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1247 (5th Cir. 1979)); *see also McGillis/Eckman Inv.-Billings,* 2010 WL 3123266 at *6; *Enron*, 317 B.R. at 640.

11

the applicable quarters showing $548,726.72 in income.[39] It is unclear exactly what dispute exists as to the calculation of the taxes sought as opposed to Juneau's right, or ability, to collect those amounts as a result of FVD's bankruptcy. Contrary to Juneau's argument that this is simply a state law matter, *both* parties have placed the dischargeability of the sales taxes at issue, because Juneau specifically seeks a determination that the taxes have not been discharged.[40] More to the point, FVD's plan of reorganization explicitly enjoins actions against the Beardsleys for the duration of the plan. The plan's injunctions form the basis of the Beardsleys' counterclaim for damages. Juneau fails to address this fundamental, and preliminary, matter.

The Oregon bankruptcy court has a strong, inherent interest in interpreting its confirmation order, specifically the discharge and "Beardsley" injunctions.[41] It has the history and understanding of the case necessary to efficiently and economically administer the matter. The remaining five factors to be considered in determining whether to transfer venue in the interest of justice are neutral. They are outweighed by the Oregon bankruptcy court's interest in interpreting, and, if necessary, enforcing its own orders, and the efficiency of having the Oregon court, as the home court, resolve these claims and the intertwined

---

[39] *Answer* (Docket No. 3) at 4-5.

[40] Ex. A to *Notice of Removal* (Docket No. 1-1), at 4 (requesting, "[j]udgment that the Chapter 11 Bankruptcy in the U.S. Bankruptcy Court for the District of Oregon, Case No. 09-39718 did not discharge the Defendants' CBJ sales tax debt.").

[41] *See generally Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). The Eleventh Circuit has held that the power to enter sanctions for violation of discharge injunction is jurisdictional and resides exclusively with the court that issued the injunction. *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 971 (11th Cir. 2012).

12

bankruptcy issues. Further, the Oregon bankruptcy court is the proper court to balance any interests in interpreting and enforcing FVD's confirmation order against those supporting remand.[42]

Juneau asks this court to prematurely consider substantive issues, such as the effect of FVD's failure to list its sales taxes, as opposed to its property taxes, on the bankruptcy schedules. All of these issues can be left for determination by the Oregon bankruptcy court, with the exception of one: jurisdiction. This is because case law cautions that, when faced with competing motions to transfer venue and remand, courts should determine whether bankruptcy court jurisdiction exists before transferring venue.[43] Absent jurisdiction, the case should instead be remanded.[44] Juneau contends that bankruptcy courts do not have jurisdiction over its state law claims.

---

[42] Other courts, faced with simultaneous motions to transfer venue of a removed action and to remand the action, have found that the action should be transferred to the "home" court, where the bankruptcy was filed, to permit that court to decide the issue of remand. *Cornerstone Dental*, 2008 WL 907374 at *1-2 (citing *Weniger v. Intermet Realty P'ship (In re Convent Guardian Corp.)*, 75 B.R. 346 (Bankr. E.D. Pa. 1987)); *see also Bunsow v. Davis*, 2012 WL 5386094 (Bankr. N.D. Cal. Oct. 31, 2012); *Everett v. Friedman's Inc.*, 329 B.R. 40, 41 (S.D. Miss. 2005); *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123, 127-28 (Bankr. D. Mass. 1984); *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 723-25 (Bankr. W.D. Pa. 1982). One reason offered is that "bankruptcy policy is better carried out if the remand decision is made by the home court." *Cornerstone Dental*, 2008 WL 907374 at *1 (citing 10 COLLIER ON BANKRUPTCY ¶ 9027.09 at 9027-13 (Alan N. Resnick & Henry J. Sommer, eds. rev 15th ed. 2007)). Otherwise, a bankruptcy court in another district might interfere with the orderly administration of a case filed in the home court. *Rapco Foam*, 21 B.R. at 724.

[43] *Cornerstone Dental*, 2008 WL 907374 at *2.

[44] *Work/Family Directions, Inc. v. Children's Discovery Ctrs., Inc. (In re Santa Clara Co. Child Care Consortium)*, 223 B.R. 40, 44 (B.A.P. 1st Cir. 1998); *see also Laird v. Gianulias*, 2013 WL 4851620 at *4-6 (N.D. Cal. Aug 12, 2013).

13

Bankruptcy jurisdiction is both created and limited by statute.[45] The bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."[46] A civil proceeding "arises under" title 11 if the cause of action itself was created by a statutory provision within title 11.[47] By contrast, a proceeding "arises in" title 11 if the cause of action was not created by title 11, but would have no existence outside of bankruptcy.[48] Finally, a proceeding is "related to" a bankruptcy case if "*the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.*"[49]

Prior to confirmation of a plan of reorganization, a bankruptcy court's "related to" jurisdiction is expansively defined to include "nearly every matter directly or indirectly related to the bankruptcy."[50] Post-confirmation, however, the Ninth Circuit has restricted the scope of "related to" jurisdiction to encompass only those matters having a "close nexus" to

---

[45] *Wilshire Courtyard v. California Franchise Tax Board (In re Wilshire Courtyard)*, 729 F.3d 1279, 1284-85 (9th Cir. 2013)(citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)).

[46] 28 U.S.C. § 1334(b).

[47] *Wilshire Courtyard*, 729 F.3d at 1285 (citing *Harris v. Whittman (In re Harris)*, 590 F.3d 730, 737 (9th Cir. 2000)).

[48] *Id.* Such proceedings include matters concerning the administration of the estate, orders to turn over property of the estate, and proceedings to determine, avoid, or recover preferences. *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005)(citing 28 U.S.C. § 157(b)(2); *In re Harris Pine Mills*, 44 F.3d 1431, 1435-37 (9th Cir. 1995)).

[49] *Pegasus Gold Corp.*, 394 F.3d at 1193 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d. 984, 994 (3d Cir. 1984)) (emphasis in original).

[50] *Wilshire Courtyard*, 729 F.3d at 1287 (citing *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005)).

14

the bankruptcy.[51] Under the "close nexus" test, a matter falls within the bankruptcy court's jurisdiction, post-confirmation, if it would affect the "interpretation, implementation, consummation, execution or administration of the confirmed plan."[52] This is a flexible concept that "requires particularized consideration of the facts and posture of each case," and is "properly applied by looking at the whole picture" presented to the court.[53] Unlike the broader "related to" test applied pre-confirmation, the "close nexus" test does not require a showing that the dispute has a "demonstrable effect on the debtor or the plan of reorganization."[54] The test is satisfied if a matter affects interpretation of a confirmed plan, including interpretation of the confirmation order.[55]

Here, the factors that support transfer of venue also confirm that the bankruptcy court has, at a minimum, "related to" jurisdiction to hear this post-confirmation action. First, Juneau's request for a determination that the discharge does not apply is essentially a claim of nondischargeability. Claims for a determination of dischargeability, or in this instance nondischargeability, "arise under" the bankruptcy for purposes of jurisdiction, and are defined as core proceedings under 28 U.S.C. § 157(b)(2)(I). Moreover, interpretation of FVD's plan is at the heart of this action. Juneau's tax claims may be based on state law, but

---

[51] *Id.* at 1287.

[52] *Id.* (quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166-67 (3d Cir. 2004)).

[53] *Id.* at 1289.

[54] *Wilshire Courtyard*, 729 F.3d at 1288-89.

[55] *Id.* at 1289.

15

the issue of whether Juneau may pursue its claims depends upon FVD's bankruptcy discharge as well as application of the injunction provisions contained within its confirmed plan.[56] Both parties have recognized as much in their pleadings. The need to interpret FVD's plan establishes the close nexus between Juneau's action and FVD's bankruptcy. The Beardsleys' counterclaim similarly requires interpretation and enforcement of FVD's plan provisions, which only the Oregon Bankruptcy Court can entertain.[57] The fact that Juneau has sued debtor FVD's partners, the Beardsleys, for this liability, rather than FVD itself, does not make interpretation of the plan any less necessary, and it does not negate jurisdiction.[58]

## CONCLUSION

As the "home" court, the Bankruptcy Court for the District of Oregon is best suited to interpret FVD's plan and determine whether it affects Juneau's tax claims. Further, the Oregon Bankruptcy Court is the only court having ancillary jurisdiction to review and

---

[56] *Pegasus Gold Corp.*, 394 F.3d at 1194 (post-confirmation, "related to" jurisdiction existed over state law claims requiring the interpretation of liquidating plan that could affect its implementation and execution).

[57] *Alderwoods Group, Inc.*, 682 F.3d at 970 ("Thus, the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."). In this regard, Juneau's reliance on *Stern v. Marshall*, __ U.S. __-, 131 S.Ct. 2594, 180 L.Ed. 2d 745 (2010), is misplaced, as courts, including bankruptcy courts, retain jurisdiction to interpret and enforce their orders, whether such jurisdiction is considered ancillary or "related to." *In re Christ Hosp.*, 502 B.R. 158, 185 (Bankr. D. N.J. 2013)("This court's jurisdiction to interpret and enforce its sale and confirmation orders is historic and unimpeded by *Stern v. Marshall* or other recent developments in the law."); *see also Travelers Indemnity Co.,* 557 U.S. at 151; *Wilshire Courtyard*, 729 F.3d at 1289-90.

[58] *Wilshire Courtyard,* 729 F.3d at 1290-91.

interpret the scope of its confirmation order and the underlying plan.[59] For these reasons, the interests of justice will best be served if venue of this matter is transferred to the Oregon Bankruptcy Court.[60] It is also appropriate, for these reasons, that the "home court" determine Juneau's *Motion to Remand.* Venue of this matter will be transferred to the Bankruptcy Court for the District of Oregon.

An order will be entered consistent with this *Memorandum.*

DATED: September 16, 2014.

BY THE COURT

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  D. Bruce, Esq.
        C. Orman, Esq.

---

[59] *Id.* at 1289.

[60] If the Oregon Bankruptcy Court ultimately determines that this case should be remanded to the Alaska Superior Court in Juneau, this court will accept the re-transfer of venue, so that remand can be accomplished. *See Cornerstone Dental*, 2008 WL 907374 at *2 n.6.